UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BLESSEY MARINE SERVICES, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-1863** |
| | * | |
| **JEFFBOAT, LLC** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Jeffboat, LLC (Rec. Doc. No. 10). The Court has reviewed the submitted memoranda and the applicable law and is ready to rule. For the following reasons, the motion is denied with leave to conduct jurisdictional discovery for 60 days and to re-file the motion thereafter.

## I. BACKGROUND

This case arises out of a contractual dispute between Plaintiff Blessey Marine Services, Inc. and Defendant Jeffboat, LLC. In its Complaint, Plaintiff avers that on April 9, 2009, it entered into an agreement with Defendant – also known as the original contract – under which Defendant was to build a double-skin tank barge for a base unit contract price of $3,325,000. This price, Plaintiff alleges, rests on the assumption that Defendant would procure steel at an average cost of $800 per ton. According to Plaintiff, the original contract provides that in the event that there is a de-escalation in the price of steel, the base unit contract price is to be lowered to what is called the adjusted unit contract price. Plaintiff asserts, after Defendant was able to procure steel at a price of $525 per ton to build the barge contemplated by the original contract, Defendant sent to Plaintiff an invoice reflecting a discount in the price of the barge.

Plaintiff avers that on August 5, 2009, the two parties entered into an amendment to the

original contract, under which Defendant further agreed to build four "hot oil vessels" and one "clean service vessel" for Plaintiff. According to Plaintiff, the amendment states that "the terms and conditions of the [Original] Contract shall apply to the Hot Oil Vessels and Clean Service Vessel of this Amendment." Plaintiff asserts that in light of this provision, the price of the five vessels contemplated in the amendment are to be adjusted in the event that there is a de-escalation in the price of steel. Plaintiff avers, however, that Defendant refused to do so, sending invoices that did not take into account the decrease in the price of steel. In June 2010, Plaintiff filed suit in this Court, asserting that Defendant has breached the terms of the contract and is liable for the resulting damages.

## II. PRESENT MOTION

Defendant has filed the present Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. No. 10). Defendant's primary argument is that it lacks the minimum contacts with Louisiana for there to be either specific or general jurisdiction. With respect to specific jurisdiction, Defendant asserts that the original contract was executed in Indiana, and performance by both parties – the manufacture and delivery of the barge by Defendant and the tender of payment by Plaintiff – took place in Indiana as well. Defendant asserts that the original contract also calls for the application of Indiana law to its terms and conditions. Defendant further states that the construction and delivery of the five vessels under the amendment to the original contract also took place in Indiana and that payment was made there as well. Defendant contends that in light of all of this, there are no minimum contacts sufficient to support specific jurisdiction.

With respect to general jurisdiction, Defendant emphasizes that it is not licensed or

registered to do business in Louisiana; it does not have employees, directors, or agents in Louisiana; it does not have a telephone number or mailing address in Louisiana; it is not required to and does not pay taxes in Louisiana; it does not have any bank accounts in Louisiana; and to the extent that it has designed and manufactured vessels for customers based in Louisiana, it has not made delivery of the vessels in this state. Defendant argues that it thus does not have continuous and systematic contacts with Louisiana.

Plaintiff opposes the motion. In its brief, Plaintiff emphasizes that over the last 20 years, the two parties have entered into a series of contracts for the custom manufacture of 75 barges, worth about $140 million, in order to populate the majority of Plaintiff's fleet. Plaintiff also notes that executives of Defendant have visited Plaintiff's office in Harahan, Louisiana on more than 30 occasions. Over the last decade, Plaintiff states, executives of Defendant have sponsored and participated in social and charitable events, such as golf tournaments, in Louisiana for marketing purposes. Plaintiff argues that in light of such deliberate efforts by Defendant to cultivate its relationship with Plaintiff and with other customers in Louisiana, Defendant can reasonably anticipate being haled into court in this state.

Plaintiff also stresses that Defendant's parent company, American Commercial Lines (ACL), advertises itself as operating a network that reaches within Louisiana. Plaintiff further alleges that all of the funds paid by Plaintiff for the barges manufactured by Defendant were remitted to ACL or related entities. Plaintiff has also shown that on its website, ACL characterizes Defendant as its "manufacturing arm" and that Defendant and ACL are both described as operating a facility that occupies "68 acres of land and 5,600 feet of frontage" in Jeffersonville, Indiana. Plaintiff suggests that given the relationship between Defendant and

ACL, it is appropriate to impute ACL's contacts with Louisiana to Defendant.

Plaintiff and Defendant dispute whether jurisdictional discovery should take place. Plaintiff insists that it has made a prima facie showing of personal jurisdiction, but requests that jurisdictional discovery be allowed to confirm the existence of minimum contacts in this case. Defendant argues that Plaintiff's request is unwarranted. Defendant emphasizes that it would be a waste of resources for the parties to undertake jurisdictional discovery because personal jurisdiction does not exist even when all of the facts that have been proffered thus far are construed in favor of Plaintiff.

## III. LAW AND ANALYSIS

### A. The Personal Jurisdiction Inquiry

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008). Louisiana's "long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 365 (5th Cir. 2010); *see also* La. Rev. Stat. Ann. § 13:3201(B). "The exercise of personal jurisdiction can thus be maintained if the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), "and if the exercise of jurisdiction over the nonresident defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

"There are two types of minimum contacts: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "Where a defendant has 'continuous and systematic general business contacts' with the forum state, the court may exercise 'general' jurisdiction over any action brought against that defendant." *Choice Healthcare*, 615 F.3d at 368 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "When the contacts are less extensive, the court may still exercise 'specific' jurisdiction where a 'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Walk Haydel*, 517 F.3d at 243). "A nonresident 'may permissibly structure his primary conduct so as to avoid being haled into court in a particular state.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). This means that "[p]roof by a preponderance of the evidence is not required." *Id.* In addition, it means that "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *accord Walk Haydel*, 517 F.3d at 241 (noting that "even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed

facts").

"Contracting with a resident of the forum state does not alone support the exercise of jurisdiction over [a] defendant." *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003). Instead, in cases involving disputes arising out of a contract, the inquiry is more nuanced, looking to "the factors of prior negotiation, contemplated future consequences, terms of the contract, and the parties' actual course of dealing." *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985). Thus, in this inquiry, the place of contract negotiation and execution, the place of contract performance, and the state whose laws the parties have chosen to govern the contract are all significant in evaluating whether specific jurisdiction exists. *See Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (focusing on place of contract performance and on choice-of-law provision). The place of contract performance, in particular, has been described as "a 'weighty consideration.'" *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (quoting *Command-Aire*, 963 F.2d at 94).

"Unlike the specific jurisdiction analysis, which focuses on the cause of action, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). In particular, the Fifth Circuit has "emphasized that in order to confer general jurisdiction, a defendant must have a business presence *in* [the forum state]. It is not enough that

a corporation do business *with* [the forum]." *Id.* at 611 (citing *Access Telecom*, 197 F.3d at 717) (emphasis in original); *see also Revell v. Lidov*, 317 F.3d 467, 471 & n.19 (5th Cir. 2002).

To ascertain whether personal jurisdiction exists, a court may impute to the corporate defendant the contacts that an affiliated corporation has with the forum state. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). But because the courts "have long presumed the institutional independence of related corporations," there must be "clear evidence" of "one corporation asserting sufficient control to make he other its agent or alter ego." *Dickson Marine*, 179 F.3d at 337. In other words, there must be "a showing of 'something beyond' the mere existence of a corporate relationship . . . to warrant the exercise of jurisdiction over the nonresident defendant." *Freudensprung*, 379 F.3d at 346 (quoting *Dickson Marine*, 179 F.3d at 338). In fact, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)

In determining whether the presumption of corporate independence has been rebutted, the court consider a number of "nonexhaustive factors." *Freudensprung*, 379 F.3d at 346 (citing *Hargrave*, 710 F.2d at 1160). These are (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they have common officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate bank accounts, accounting and payroll systems, insurance contracts, budgets, financial records, and tax returns; (6) whether the parent exercises complete authority over the subsidiary's general policy; and (7) whether the parent exercises complete authority over the subsidiary's daily operations. *See Hargrave*, 710 F.2d at 1160; *see also Adm'rs of Tulane Educ.*

7

*Fund. v. Biomeasure, Inc.*, 687 F. Supp. 2d 620, 624 (E.D. La. 2009).

"When a plaintiff makes a prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). "To evaluate the reasonableness of exercising jurisdiction," a court considers "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Johnston*, 523 F.3d at 615. The burden is on the defendant to "make a 'compelling case' that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Id.* (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "It is rare to say [that] the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska*, 195 F.3d at 215 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)).

**B. Jurisdictional Discovery**

It is well settled that a court may allow discovery in order to allow the parties to ascertain facts that are relevant in determining personal jurisdiction. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978). To be sure, a district court may properly deny a request for jurisdictional discovery if such discovery would not "'add any significant facts'" to the personal jurisdiction inquiry and would thus "serve no purpose." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) (quoting *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 447 (5th Cir. 1979)). The Fifth Circuit has indicated, however, that if "a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the

plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *accord* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.6 (3d ed. 2004) (noting that jurisdictional discovery can be obtained "when there is some basis for believing that [it] would be fruitful").[1] A district court "has discretion as to the type and amount of discovery to allow." *Walk Haydel*, 517 F.3d at 241.

Thus far, Plaintiff does not appear to have made a prima facie case for specific jurisdiction. Although it is undisputed that Mr. Tim Allen, who is employed by Defendant as its director of sales, visited Plaintiff in Louisiana twice in relation to the original contract, it is also uncontroverted that the performance of the original contract and of the amendment was to take place outside of Louisiana. The parties contemplated that Defendant would build the vessels at its facility in Jeffersonville, Indiana, and make delivery in the Ohio River adjacent to Louisville, Kentucky. In return, the original contract provided that payment would be made by wire to a bank in Texas. Moreover, the record shows that the parties have chosen the law of Indiana to govern the original contract and the amendment. These factors weigh against a finding of specific jurisdiction.

With respect to general jurisdiction, it is unclear at this time whether Plaintiff has established a prima facie case. In its motion, Defendant emphasizes that it is not licensed or registered to do business in Louisiana; it does not have employees, directors, or agents in

---

[1] The availability of jurisdictional discovery may be more limited in cases implicating sovereign immunity "because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *See Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). Needless to say, such considerations are not at play in this case.

9

Louisiana; it does not have a telephone number or mailing address in Louisiana; it is not required to and does not pay taxes in Louisiana; it does not have any bank accounts in Louisiana; and to the extent that it has designed and manufactured vessels for customers based in Louisiana, it has not made delivery of the vessels in this state. In its opposition, Plaintiff stresses that over the last 20 years, Defendant has manufactured and sold 75 barges, worth about $140 million, to Plaintiff and engaged in various activities in Louisiana meant to nurture a long-term business relationship with it, as well as with other customers in the state.

The overall import of these facts is, at this time, unclear. They do, however, "suggest with reasonable particularity the possible existence" of other facts that would render general jurisdiction appropriate. *Fielding*, 415 F.3d at 429. Indeed, the specific factual allegations that Plaintiff has thus far made indicate that Defendant may have substantial interactions with other Louisiana customers in Louisiana such that general jurisdiction would be appropriate. Plaintiff has thus made a "preliminary showing" that jurisdictional discovery should take place in order to ascertain the nature of Defendant's contacts with its other customers in Louisiana. *Fielding*, 415 F.3d at 429.

In addition, the record at this juncture is not sufficiently developed as to allow this Court to determine whether the contacts that Defendant's affiliates have with Louisiana may be imputed to Defendant for the purpose of establishing general jurisdiction. *See Hargrave*, 710 F.2d at 1160. In this regard, Plaintiff has likewise made a "preliminary showing" indicating that jurisdictional discovery into this area should be conducted. *Fielding*, 415 F.3d at 429. Plaintiff has alleged that all of the funds that it has paid for the purchase of vessels manufactured by Defendant were remitted to ACL or related entities. Plaintiff has also shown that ACL, on its

website, describes Defendant as its "manufacturing arm." The website states that ACL itself "operates America's largest single-site inland shipbuilding and repair facility," which is described as occupying "68 acres of land and 5,600 feet of frontage" in Jeffersonville, Indiana. The website gives the same description of Defendant, noting that it is "America's largest inland shipbuilder and repair facility" and that Defendant also "spans 68 acres of land and 5,600 feet of frontage" in Jeffersonville, Indiana. Altogether, this evidence "suggest[s] with reasonable particularity the possible existence" of other facts that may warrant the imputation of contacts between Defendant's affiliates and Louisiana to Defendant itself for the purpose of determining general jurisdiction. *Fielding*, 415 F.3d at 429.

Defendant resists Plaintiff's request for jurisdictional discovery, contending that Plaintiff has thus far not made out a prima facie case for either specific or general jurisdiction. Defendant's argument may be sound if the Fifth Circuit had adopted the rule, apparently applicable in the Second and Seventh Circuits, that jurisdictional discovery is unavailable to a plaintiff that is unable to establish a prima facie case of personal jurisdiction. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877-78 (7th Cir. 2006); *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998). But, as noted above, the Fifth Circuit has suggested that a plaintiff need only to present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts," *Fielding*, 415 F.3d at 429, or to otherwise show that jurisdictional discovery would not be wholly futile, *Wyatt*, 686 F.2d at 284, in order to obtain such discovery.

The Fifth Circuit thus appears to have aligned itself with the other circuits that have established a comparatively lower bar for permitting jurisdictional discovery. *See, e.g.*, *Metcalfe*

*v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (noting that "if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction'" (quoting *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983))); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (noting that jurisdictional discovery "may be appropriately granted . . . where a more satisfactory showing of the facts is necessary" (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977))); *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008) (noting that "the threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low" as a plaintiff need only "demonstrate the existence of a plausible factual disagreement or ambiguity"); *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (allowing jurisdictional discovery even though the plaintiff had not "adduced sufficient proof for a prima facie case" of personal jurisdiction, but had "offered documentary evidence, and not merely speculations or conclusory allegations" of the defendant's contacts with the forum state); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (holding that jurisdictional discovery should be allowed if the plaintiff "has 'demonstrate[d] that it can supplement its jurisdictional allegations through discovery'" (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000))).

There is, moreover, good reason for not requiring a plaintiff to establish a prima facie case of personal jurisdiction in order for there to be jurisdictional discovery. Indeed, as one court has explained, it would be wholly "counterintuitive to require a plaintiff, *prior to* conducting discovery, to meet the same burden that would be required in order to defeat a motion to

dismiss." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001). Defendant's argument that jurisdictional discovery should not take place is therefore unpersuasive and, in light of Fifth Circuit case law, almost certainly unsound. Here, Plaintiff has made sufficient factual allegations that point toward "the possible existence" of other jurisdictional facts that may, in turn, warrant the exercise of personal jurisdiction over Defendant. *Fielding*, 415 F.3d at 429. Accordingly, at this time, Defendant's motion to dismiss must be denied with leave to re-file after jurisdictional discovery.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. No. 10) is hereby **DENIED** with leave to re-file after 60 days of discovery limited to the issue of personal jurisdiction.

New Orleans, this 10th day of February, 2011.

_____
UNITED STATES DISTRICT JUDGE