UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BLESSEY MARINE SERVICES, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-1863** |
| | * | |
| **JEFFBOAT, LLC** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court is a Motion to Object to the Magistrate Judge's Order (Rec. Doc. No. 41) filed by Defendant Jeffboat, LLC. The Court has reviewed the submitted memoranda and the applicable law. For the following reasons, the motion is denied.

## I. BACKGROUND

This case arises out of a contractual dispute between Plaintiff Blessey Marine Services, Inc. and Defendant Jeffboat, LLC. In its Complaint, Plaintiff avers that on April 9, 2009, it entered into an agreement with Defendant – also known as the original contract – under which Defendant was to build a double-skin tank barge for a base unit contract price of $3,325,000. This price, Plaintiff alleges, rests on the assumption that Defendant would procure steel at an average cost of $800 per ton. According to Plaintiff, the original contract provides that in the event that there is a de-escalation in the price of steel, the base unit contract price is to be lowered to what is called the adjusted unit contract price. Plaintiff asserts that after Defendant was able to procure steel at a price of $525 per ton to build the barge contemplated by the original contract, Defendant sent to Plaintiff an invoice reflecting a discount in the price of the barge.

Plaintiff avers that on August 5, 2009, the two parties entered into an amendment to the

1

original contract, under which Defendant further agreed to build four "hot oil vessels" and one "clean service vessel" for Plaintiff. According to Plaintiff, the amendment states that "the terms and conditions of the [Original] Contract shall apply to the Hot Oil Vessels and Clean Service Vessel of this Amendment." Plaintiff asserts that in light of this provision, the price of the five vessels contemplated in the amendment are to be adjusted in the event that there is a de-escalation in the price of steel. Plaintiff avers, however, that Defendant refused to do so, sending invoices that did not take into account the decrease in the price of steel. In June 2010, Plaintiff filed suit in this Court, asserting that Defendant has breached the terms of the contract and is liable for the resulting damages.[1]

In November 2010, Defendant filed a motion to dismiss for lack of personal jurisdiction. Defendant argued that it lacks the minimum contacts with Louisiana for there to be either specific or general jurisdiction. Plaintiff opposed the motion. In its brief, Plaintiff emphasized, *inter alia*, that it would be appropriate to impute the contacts between Louisiana and Defendant's affiliate, American Commercial Lines (ACL), to Defendant itself. Plaintiff noted, for instance, that on its website, ACL characterizes Defendant as its "manufacturing arm" and that Defendant and ACL are both described as operating a facility that occupies "68 acres of land and 5,600 feet of frontage" in Jeffersonville, Indiana. Plaintiff sought the denial of Defendant's motion, but requested, in the alternative, the opportunity to conduct jurisdictional discovery.

In January 2011, the Court took the motion under submission, and in February 2011, the Court denied the motion with leave to re-file after jurisdictional discovery. The Court observed

---

[1] Plaintiff has recently filed an Amended Complaint, alleging that there were also defects in two of the vessels built by Defendant. *See* Pl.'s Am. Compl. (Rec. Doc. No. 44).

that even though Plaintiff did not seem to have a prima facie case for specific jurisdiction, Plaintiff did make a preliminary showing to justify jurisdictional discovery with respect to general jurisdiction. The Court found that Plaintiff had presented specific factual allegations suggesting that Defendant itself may have substantial interactions with other Louisiana customers in Louisiana such that general jurisdiction would be appropriate. In addition, the Court found that Plaintiff had adduced evidence that suggested with sufficient particularity the possible existence of other facts that may warrant the imputation of contacts between Defendant's affiliates and Louisiana to Defendant itself. The Court therefore denied Defendant's motion with leave to re-file after jurisdictional discovery.

In April 2011, Plaintiff filed a motion to compel, which was referred to the Magistrate Judge. Through its motion, Plaintiff sought to compel Defendant to produce, *inter alia*, 1) copies of ACL's budget for the current year, 2) copies of Defendant's budget for the current year, 3) copies of ACL's tax returns for the last five years, and 4) copies of Defendant's tax returns for the last five years.[2] In response to Plaintiff's motion to compel, Defendant advanced several arguments. First, Defendant asserted that all of the material sought by Plaintiff were not relevant to the question of personal jurisdiction. Second, with respect to the ACL-related requests, Defendant stated that it did not have legal control or custody over the material. Third, with respect to its own budget, Defendant stressed that the information is highly proprietary.

In May 2011, the Magistrate Judge granted in part and denied in part Plaintiff's motion (Rec. Doc. No. 39). In particular, the Magistrate Judge granted in part and denied in part Plaintiff's requests as to 1) copies of ACL's budget for the current year, 2) copies of Defendant's

---

[2] These were the subject of Plaintiff's requests for production Nos. 6, 7, 8, and 9.

budget for the current year, and 3) copies of ACL's tax returns for the last five years. The Magistrate Judge held as discoverable "any items or provisions contained in [these documents] relating to budgetary, spending, tax-paying, tax calculation, employee activity or employer policy, <u>either</u> by an ACL entity for, related to, or on behalf of Jeffboat, <u>or</u> specifically in Louisiana." The Magistrate Judge otherwise denied Plaintiff's requests. Finally, the Magistrate Judge granted Plaintiff's request as to copies of Defendant's tax returns for the last five years and, in so doing, overruled Defendant's objections.

## II. PRESENT MOTION TO OBJECT

Defendant has now filed a motion, asking this Court to set aside the Magistrate Judge's order insofar as it relates to the four aforementioned categories of documents. Defendant has identified three reasons in support of its request. First, Defendant contends that in light of Delaware law, the Jeffboat and ACL tax returns are not relevant to the personal jurisdictional inquiry. Second, Defendant stresses that the information sought is proprietary and confidential. Third, Defendant makes the related argument that the need for the material is outweighed by the burden of disclosing confidential information and that, as a result, a limit on discovery should have been imposed under Rule 26(b)(2)(C)(iii).

Plaintiff opposes the motion. Plaintiff emphasizes that the standard of review with respect to an order issued by a magistrate judge regarding a nondispositive matter is high. Plaintiff also notes that a district court is not to review an argument that was not properly presented to the magistrate judge. According to Plaintiff, Defendant's argument regarding limiting discovery under Rule 26(b)(2)(C)(iii) was not presented to the Magistrate Judge. Plaintiff states, in the alternative, that the need for the material outweighs the burden of disclosure and that

accordingly, no limit on discovery is warranted. Finally, Plaintiff states that the material that it has been seeking is relevant to the jurisdictional inquiry. Plaintiff therefore urges this Court not to set aside the Magistrate Judge's order.

## III. LAW AND ANALYSIS

### A. Scope and Standard of Review

The scope of a district court's review of a magistrate judge's decision regarding a nondispositive pretrial matter is narrow. Indeed, a party is generally not entitled to raise arguments that it did not present to the magistrate judge. *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994); *see also Martin v. Barnhart*, No. 02-3574, 2004 WL 1661207, at *5 (E.D. La. 2004). In other words, "[p]arties must take before the magistrate 'not only their best shot but all of their shots.'" *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm. of City of Portland*, 593 F. Supp. 1315, 1318 (D. Me. 1984)). With respect to those arguments that a party has properly preserved, a district court may set aside the magistrate judge's ruling only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

### B. Defendant's Objections to the Magistrate Judge's Order

As noted above, Defendant has advanced three arguments in support of its request that this Court set aside the Magistrate Judge's order. First, Defendant contends that the Jeffboat and ACL tax returns are not relevant to the personal jurisdictional inquiry. Second, Defendant stresses that the information sought is proprietary and confidential. Third, Defendant makes the related argument that the need for the material is outweighed by the burden of disclosing confidential information and that, as a result, a limit on discovery should have been imposed

under Rule 26(b)(2)(C)(iii). The Court will discuss each in turn.

### 1. Relevance of the tax returns

Defendant first argues that the Jeffboat and ACL tax returns are not "relevant" within the meaning of Rule 26(b)(1). The Court is not persuaded that in concluding otherwise, the Magistrate Judge's ruling was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Defendant contends that the tax returns are irrelevant because as a single-member limited liability company organized under Delaware law, it is entitled to the benefits of pass-through taxation. Thus, Defendant contends, the fact that its member files taxes on its behalf reveals little about whether Defendant is sufficiently separate from its member to preclude the imputation of contacts for the purpose of general jurisdiction.

Defendant's argument is not persuasive because, even if it is sound, it reflects an overly constricted view of the term "relevant" under Rule 26(b)(1). Indeed, as the Supreme Court has stated, the term "relevant" under Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Defendant did not argue to the Magistrate Judge that the tax returns themselves could not reasonably lead to other facts that "*could* bear on *any* issue that is *or may be*" relevant to personal jurisdiction. *Id.* Nor has Defendant suggested to this Court that the tax returns are irrelevant under this broad definition. Defendant has not demonstrated that the Magistrate Judge clearly erred in concluding that the tax returns are relevant.

### 2. Proprietary and confidential nature of the information

The second argument that Defendant has presented to this Court is the contention that all

of the information requested – the Jeffboat and ACL tax returns and budgets – are confidential and proprietary in nature. Before the Magistrate Judge, however, Defendant only argued that its own budget is confidential. *See* Def.'s Mem. at 16-17 (Rec. Doc. No. 34). Accordingly, the Court will not consider Defendant's contention as they relate to the ACL budget and the Jeffboat and ACL tax returns. *See Borden*, 836 F.2d at 6. These are assertions that "could have been, but inexplicably [were] not, presented to the magistrate in the first instance." *Id.*

As to Defendant's own budget, Defendant has, in conjunction with the instant motion, provided some supporting material to buttress its assertion that it is in direct competition with Plaintiff and that its budget is confidential and proprietary in nature. *See* Def.'s Ex. C (Rec. Doc. No. 41-4); Def.'s Ex. D (Rec. Doc. No. 41-5). However, Defendant failed to furnish any such supporting material to the Magistrate Judge. Under these circumstances, the Court cannot say that the Magistrate Judge's decision to reject what amounted to an unsubstantiated assertion on the part of Defendant was "clearly erroneous." Fed. R. Civ. P. 72(a).

To the extent that Defendant asks this Court to review the material that it has now made available, the Court must decline that request. The standard of review mandated by Congress and implemented in the Federal Rules of Civil Procedure, by its own terms, confines this Court's review to the material that the parties presented to the Magistrate Judge. *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-93 (3d Cir. 1992) (holding that in reviewing a magistrate judge's ruling on a nondispositive matter, a district court may not consider material that was not available to the magistrate judge); *Blair v. Sealift, Inc.*, 848 F. Supp. 670, 675 (E.D. La. 1994) (same). It would therefore be improper for this Court to set aside the Magistrate Judge's order based on material that was not put before him.

### 3. The balance between the burden of disclosure and the need for the material

As noted above, Defendant's third argument is related to its second contention. Defendant states that Plaintiff has not shown that the Court would need the aforementioned material in order to resolve the question of personal jurisdiction and that, in light of the burden of disclosing allegedly confidential information, a limit on discovery should be imposed under Rule 26(b)(2)(C)(iii). This argument is also unavailing. Defendant simply did not present this assertion to the Magistrate Judge. Accordingly, the Court will not address it. *See Borden*, 836 F.2d at 6.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Object to the Magistrate Judge's Order (Rec. Doc. No. 41) is hereby **DENIED**.

New Orleans, Louisiana, this 23rd day of June, 2011.

UNITED STATES DISTRICT JUDGE