UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BLESSEY MARINE SERVICES, INC.** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 10-1863** |
| | * | |
| **JEFFBOAT, LLC** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court are cross Motions for Partial Summary Judgment filed on behalf of Plaintiff Blessey Marine Services Inc. (R. Doc. 123) and on behalf of Defendant Jeffboat, LLC (R. Doc. 128). The Court has reviewed the submitted memoranda and the applicable law, and having heard oral arguments on the motions, is ready to rule. For the following reasons, both Motions are denied.

## I. BACKGROUND

This case arises out of a contractual dispute between Plaintiff Blessey Marine Services, Inc. ("BMS") and Defendant Jeffboat, LLC ("Jeffboat"). In its Complaint, BMS avers that on April 9, 2009, it entered into an agreement with Jeffboat (the "original Contract") under which Jeffboat was to build a double-skin tank barge for a base unit contract price of $3,325,000. This price, BMS alleges, rested on the assumption that Jeffboat would procure steel at an average cost of $800 per ton. According to BMS, the original Contract further provides that in the event of a de-escalation in the price of steel, the base unit contract price would be lowered to what is called the adjusted unit contract price.[1] BMS asserts that, after Jeffboat was able to

---

[1] Article III of the original contract reads, in pertinent part, as follows:

1

procure steel at a price of $525 per ton to build the barge contemplated by the original contract, Jeffboat sent to BMS an invoice reflecting a discount in the price of the barge.

BMS avers that on August 5, 2009, the two parties entered into an amendment to the original contract, under which Jeffboat further agreed to build five more vessels for BMS. The amendment states, in pertinent part, as follows:

"Article III is amended in part to add the additional terms and conditions as follows:
[. . .]
*The Base Unit Contract Price for each Hot Oil Vessel and the Clean Service Vessel may be adjusted by reason of:*
*1. The increase or decrease resulting from alterations pursuant to Article V of the Contract.*
*2. The increase or decrease resulting from changes in taxes pursuant to Article VI of the Contract.*
[. . .]
   "This First Amendment is solely as to scope and pricing of barge deliveries, and does not amend any other obligations within the [original] Contract. Except for the steel escalation as provided in Article III of the Contract, the terms and conditions of the Contract shall apply to the Hot Oil Vessels and Clean Service Vessel of this Amendment. In all other respects, the terms and conditions of the Contract remain unchanged and in place and are hereby ratified and

---

"**ARTICLE III-CONTRACT PRICE:**
   "PURCHASER shall pay or cause to be paid to BUILDER for the Vessel completed in accordance with the terms of this CONTRACT, a basic unit contract price (the "Base Unit Contract Price") of $3,325,000.00.

"The Base Unit Contract Price may be adjusted by reason of:
1. The decrease resulting from the de-escalation pursuant this [sic] Article III hereof.
2. The increase or decrease resulting from alterations pursuant to Article V hereof.
3. The increase or decrease resulting from changes in taxes pursuant to Article VI hereof.

   "The Base Unit Contract Price shall be adjusted as follows:

"The average cost per ton, FOB Builder's facility, of all steel plate and structural used in the Base Unit Contract Price is $800 per ton; however, under no circumstances will average steel price exceed $800.00 per ton. The Adjusted Unit Contract Price shall be adjusted to include the actual average cost per ton, FOB Builder's facility, for all steel plate and structural steel used in the construction of the barge to be escalated/de-escalated."

Contract No. 9136, Plaintiff's Exhibit "1," Tab "A" (R. Doc. 123-2)

2

confirmed without amendment.  All prior verbal and written offers relating to this First Amendment are hereby terminated."

First Amendment to Contract No. 9136, Plaintiff's Exhibit "1," Tab "B" (R. Doc. 123-2) (italics in original).  BMS asserts that in light of this provision, the price of the five vessels contemplated in the amendment must be adjusted in the event that there is a de-escalation in the price of steel.  BMS avers, however, that Jeffboat refused to do so, sending invoices that did not take into account the decrease in the price of steel.  In June 2010, BMS filed suit in this Court, asserting that Jeffboat has breached the terms of the contract and is liable for the resulting damages.

On January 17, 2012, Jeffboat filed a Motion to Dismiss for Lack of Personal Jurisdiction.  Jeffboat argued that the Court lacked jurisdiction over Jeffboat, a Delaware corporation doing business in Indiana.  On March 30, 2012, the Court denied Jeffboat's motion.  Jeffboat subsequently filed an Answer denying liability and asserting various affirmative defenses.  (R. Doc. 117).  Jeffboat argues that the amended contract did not contain a de-escalation clause and that therefore Jeffboat did not owe BMS a discount based on any decrease in the price of steel.

## II.  PRESENT MOTIONS

BMS filed a Motion for Partial Summary Judgment on the issue of liability on November 19, 2012.  (R. Doc. 123).  Jeffboat opposes BMS's Motion (R. Doc. 126) and also filed a Cross Motion for Partial Summary Judgment (R. Doc. 128), which BMS opposes (R. Doc. 134).

### A. BMS's Motion for Partial Summary Judgment

In its Motion (R. Doc. 123), BMS argues that there is no genuine dispute as to any

material fact relating to liability, and that BMS is entitled to judgment as a matter of law.  BMS seeks an Order specifying that BMS is entitled to a reduction in the contract price so as to reflect the actual cost of the steel Jeffboat used to build the five vessels.

BMS argues that the First Amendment to Contract No. 9136 (the "Amendment") preserved the de-escalation provision found in Article III of the original Contract.  BMS notes first that, under Indiana law, which applies under the Contract's terms, the intent of the parties must be determined from the four corners of the document unless the language of the agreement is ambiguous.  BMS therefore argues first that the Amendment's language unambiguously preserves the de-escalation provision because: (1) "escalation" and "de-escalation" are "terms of art" in Jeffboat contracts, with distinct meanings, and cannot substitute for each other; (2) the Amendment, by its own terms, only "add[s] . . . additional terms" to Article III of the original Contract, rather than removing terms; and (3) the Amendment eliminates a steel escalation provision from Article III but does not mention, and therefore does not eliminate, the steel de-escalation provision.  BMS argues, alternatively, that any ambiguity in the amended contract should be interpreted against Jeffboat, its drafter.  Finally, BMS seeks to counter Jeffboat's arguments based on the parties' negotiations for a "fixed price" because the term "fixed price" does not appear in the amended contract and because the amended contract expressly provides for the termination of prior written and verbal offers.

Jeffboat opposes BMS's Motion.  (R. Doc. 126).  Jeffboat argues that the Amendment excludes the de-escalation provision from the original Contract in two ways: first, by expressly providing that the Base Unit Contract Price may be adjusted only in the event of alterations made to the barges or in the event of changes in taxes; and, second, by expressly providing that Article

III of the original Contract would not apply.  Jeffboat argues in the alternative that, if the amended contract is ambiguous, Indiana law requires the Court to interpret the language so as to give meaning to all terms, thus excluding BMS's interpretation.  Jeffboat further argues that, if the amended contract is ambiguous, Indiana law allows the Court to examine extrinsic evidence of the parties' intent, which in this case includes multiple emails evincing an intent to set a fixed price rather than one to be adjusted based on the price of steel.  Jeffboat further argues that, contrary to Indiana law's requirement that ambiguous provisions be interpreted so as to harmonize all relevant terms, BMS's proffered interpretation causes several of the amended contracts provisions to conflict.  Finally, in response to BMS's argument that the amended contract does not contain the term "fixed price," Jeffboat argues that the amended contract nonetheless makes clear the two circumstances in which the base contract price can change, meaning the price is fixed in all other respects.

BMS filed a reply memorandum in support of its Motion.  (R. Doc. 132).  In it, BMS reiterates its argument that the amended contract's inclusion of an integration clause forecloses this Court's consideration of extrinsic evidence, including email exchanges proffered by Jeffboat designed to shed light on the parties' intent.

As noted above, Jeffboat has also moved for partial summary judgment in its favor on the question of liability and seeking an Order dismissing BMS's breach of contract claim.  (R. Doc. 128).  Its arguments mirror those of its opposition to BMS's Motion.  Similarly, BMS's opposition to Jeffboat's Motion (R. Doc. 134) contains largely the same arguments contained in its own Motion.  BMS adds one argument, however, namely that Jeffboat's alleged failure to offer sworn testimony from a Jeffboat executive as to Jeffboat's own intent to remove the de-

5

escalation clause indicates that summary judgment in Jeffboat's favor is inappropriate.

## III. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted). Accordingly, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all her evidence." *Id.* at 326.

### B. Analysis

Each party makes both an offensive argument, that the contract unambiguously requires a ruling in its favor, and a defensive argument, that the contract is ambiguous. The amended contract's terms are sufficiently ambiguous as to preclude summary judgment for either side, even when considered in light of the extrinsic evidence the parties have presented. The Court finds that the parties' intentions in this matter are contested issues of material fact and are

proper fodder for trial, not for summary judgment.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (R. Doc. 123) is **DENIED**. **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 128) is **DENIED**.

New Orleans, Louisiana, this 8th day of April, 2013.

                    UNITED STATES DISTRICT JUDGE